IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

COLUMBIA GAS TRANSMISSION LLC,

Plaintiff,

v.                                                    CIVIL ACTION NO.   3:14-11854

UNITED STATES OF AMERICA,
WEST VIRGINIA NATIONAL GUARD,
WEST VIRGINIA STATE ARMORY BOARD,
ADJUTANT GENERAL OF WEST VIRGINIA,
and TRI-STATE AIRPORT AUTHORITY,

Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Motions to Dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, brought by: Defendants West Virginia Army National Guard, West Virginia State Armory Board, and Adjutant General of West Virginia ("State Defendants") (ECF No. 43); Defendant United States of America ("United States") (ECF No. 73); and Defendant Tri-State Airport Authority (ECF No. 77).   For the following reasons, the Court **GRANTS** the State Defendants' Motion to Dismiss, **DENIES** the United States' Motion to Dismiss, and **DENIES** Defendant TSAA's Motion to Dismiss.

## I.    BACKGROUND

### A.  Factual Background

In the course of its business, Plaintiff, Columbia Gas Transmission, LLC ("Columbia") transports natural gas via underground pipelines. Compl. ¶12.   A section of one of Columbia's high-pressure gas lines, BM-74, is located on a right of way adjoining property owned by

Defendant Tri-State Airport Authority ("TSAA") and leased to the West Virginia State Armory Board for use by the West Virginia Army National Guard ("WVANG"). Compl. ¶¶13–14. This case stems from the allegation that negligent storm water management and earthwork on real property owned by TSAA and leased to the WVANG caused a landslide, thereby displacing one of Columbia's high-pressure natural gas transmission pipelines just downhill.

According to the Complaint, "Tri-State Airport Authority and/or the West Virginia Army National Guard undertook certain excavation, grading, and other earthwork to clear vegetation and artificially build up and expand the mountain top and prepare the leased property for construction of a National Guard facility." Compl. ¶15.   In the course of that expansion, the leased property was "excavated, graded and/or paved, and water drainage ditches, channels, gutters and pipes were constructed and installed to artificially collect surface water from the leased premises and direct it onto the excavated slope immediately above and adjacent to Columbia's easement and pipeline." Compl. ¶17.

Allegedly as a result of the landslide, a section of the pipeline was displaced, moving approximately 18 feet from its original position and suffering severe damage. Compl. ¶¶18–19. Whatever the cause, Plaintiff reports damages of approximately $1,116,915, expended to stabilize and replace 200 feet of pipeline. Compl. ¶19.   Columbia subsequently initiated this suit against the West Virginia Army National Guard, West Virginia State Armory Board, Adjutant General of West Virginia, Tri-State Airport Authority, and the United States, alleging trespass, nuisance, and negligence.

Plaintiff seeks damages pursuant to the Federal Tort Claims Act, 28 U.S.C.A. § 2671 *et seq.* ("FTCA").   In turn, Defendants West Virginia Army National Guard, West Virginia State Armory Board, and Adjutant General of West Virginia move to dismiss for lack of subject matter

jurisdiction, arguing that, for purposes of Plaintiff's Complaint, these three Defendants are not Federal employees, agents or instrumentalities pursuant to the FTCA and are therefore immune from suit in Federal Court.   Defendant United States of America moves to dismiss for lack of subject matter jurisdiction arguing that Plaintiff has failed to present an administrative claim as required under the FTCA and has further failed to identify any acts or omissions by federal employees.   Defendant TSAA also moves to dismiss for lack of subject matter jurisdiction arguing that, as an agency of the State of West Virginia, it enjoys immunity from Plaintiff's claims.   In order to consider these arguments, additional background on various Defendants is provided below.

### B.  Character of Defendants

#### i.   *West Virginia Army National Guard*

The National Guard is at once a federal and state program. *See Perpich v. Dept. of Defense*, 496 U.S. 334 (1990); *New Jersy Air Nat. Guard v. Federal Labor Relations Authority*, 677 F.2d 276, 278–79 (3d Cir. 1982) ("[h]istorically the Guard has been, and today remains, something of a hybrid.   Within each state the National Guard is a state agency, under state authority and control. At the same time, the activity, makeup, and function of the Guard is provided for, to a large extent, by federal law").   Generally speaking, a state assumes responsibility for its National Guard units, but those units may be "federalized" as needed. *United States v. Hawaii*, 832 F.2d 1116, 119 (9th Cir. 1987) (quoting H.R.Rep. No. 384, 97th Congr., 1st Sess. At 3 (1981), *reprinted in* 1981 U.S.C.C.A.N. at 2692, 2694) ("Except when federalized, the Guard is under the direct order of the State Governments").   A state National Guard may be activated in an exclusively state capacity, an exclusively federal capacity (e.g., pursuant to 10 U.S.C. § 12304), or under state control, but supported by federal funding (e.g., pursuant to 32 U.S.C. § 502(f)).

### ii.    *Adjutant General of West Virginia*

When under state control, the Adjutant General oversees the joint forces of the West Virginia National Guard.[1]   As explained by the West Virginia code, the adjutant general's department is "part of the executive branch of the government charged with the organization administration, operation and training, supply and discipline of the military forces of the state." W.Va. Code § 15-1A-1.   The Adjutant General is "appointed by the governor, by and with the advice and consent of the Senate." W.Va. Code § 15-1A-2.

### iii.    *West Virginia State Armory Board*

The West Virginia State Armory Board is a state agency composed of the Governor or his designee, the Secretary of State, and the Auditor. W.Va. Code § 15-6-4.   Chapter 15 of the West Virginia Code sets out the powers and duties of the West Virginia Armory Board.   Those duties include the acquisition of financing, construction, and disposition of armories. W.Va. Code § 15-6-5.


Having introduced the relevant background, the Court will next turn to the appropriate standard of review in Section II.   Section III will consider the United States' motion to dismiss Columbia's FTCA claims, Section IV will consider the State Defendants' motion to dismiss, and finally Section V will address Tri-State Airport Authority's motion to dismiss.

## II.    STANDARD OF REVIEW

It is axiomatic that a court must have subject-matter jurisdiction over a controversy before it can render any decision on the merits.   A motion to dismiss pursuant to Rule 12(b)(1) raises the fundamental question of whether a court is competent to hear and adjudicate the claims brought

---

[1] When federalized, the command of the West Virginia Army National Guard shifts from the Adjutant General of West Virginia to the Department of Defense.

before it and requires dismissal if the court lacks such jurisdiction.   Federal courts possess "only the jurisdiction authorized them by the United States Constitution and by federal statute."   *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009).   Federal Rule of Civil Procedure 12(b)(1) permits a party to move for dismissal for lack of subject matter jurisdiction. In such cases, the Fourth Circuit has explained that the plaintiff has the burden of establishing a factual basis for jurisdiction. *See Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).   In ruling on a 12(b)(1) motion, the court may consider the pleadings' allegations as jurisdictional evidence. *Id.* (citing *Trentacosta v. Frontier Pac. Aircraft Indus.*, 813 F.2d 1553, 1558-59 (9th Cir. 1987)).

Challenges to jurisdiction under Rule 12(b)(1) may be raised in two distinct ways: "facial attacks" and "factual attacks." *Thigpen v. United States*, 800 F.2d 393, 401 n.15 (4th Cir. 1986), *rejected on other grounds*, *Sheridan v. United States*, 487 U.S. 392 (1988).   A "facial attack" questions whether the complaint's allegations are sufficient "to sustain the court's jurisdiction." *Id*.   If a "facial attack" is made, the court must accept the complaint's allegations as true and decide if the complaint is sufficient to confer subject-matter jurisdiction. *Id*. (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982) and *Williamson v. Tucker*, 645 F.2d 404, 412-13 (5th Cir. 1981)).

On the other hand, a "factual attack" challenges the truthfulness of the factual allegations in the complaint upon which subject-matter jurisdiction is based. *Id*.   In this situation, a "district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) (citing *Adams*, 697 F.2d at 1219 and *Trentacosta v. Frontier Pac. Aircraft Indus.*, 813 F.2d

1553, 1558 (9th Cir. 1987)).   To prevent dismissal, "the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." *Id.* (citation omitted).   A dismissal should only be granted in those instances in which "the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.* (citation omitted).

### III.   FEDERAL TORT CLAIMS ACT

It is well established that "the United States, as sovereign, 'is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *Lehman v. Nakshian*, 453 U.S. 156, 161 (1981) (quoting *United States v. Testan*, 424 U.S. 392, 399 (1976).   Consistent with that general proposition, the Supreme Court has further settled that "limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied." *Id.* (citing *Soriano v. United States*, 352 U.S. 270, 276 (1957)).

Turning to the Federal Tort Claims Act ("FTCA"), the Court first observes that "the United States is the only proper defendant in an FTCA action." *Metter v. U.S. Army Corps of Engineers*, 9 F.Supp.3d 1090 (D. Neb. 2014) (citing *Smith v. United States*, 561 F.3d 1090, 1099 (10th Cir. 2009)); *see also* 28 U.S.C. § 2679(a); *Browning v. U.S.*, 584 Fed.Appx. 149 (4th Cir.) (affirming dismissal where plaintiff had failed to timely name the proper party in an FTCA claim: the United States); *Jackson v. Kotter*, 541 F.3d 688, 693 (7th Cir. 2008) ("The only proper defendant in an FTCA action is the United States."); *Roman v. Townsend*, 224 F.3d 24, 27 (1st Cir. 2000) (The "FTCA requires that the named defendant in an FTCA action be the United States and only the United States").

Substantively, the FTCA waives the United States' immunity "in the same manner and to the same extent as a private individual under like circumstances . . .." 28 U.S.C. § 2674. "While the FTCA waives sovereign immunity for actions alleging torts by employees of the Government, it does not create novel causes of action." *Goldstar (Panama) S.A. v. U.S.*, 967 F.2d 965, 969 (4th Cir. 1992) (citation omitted). The FTCA only serves to convey jurisdiction when the alleged breach of duty is tortious under *state* law, or when the Government has breached a duty under federal law that is analogous to a duty of care recognized by state law." *Goldstar*, 967 F.2d at 969 (citing 28 U.S.C. § 26741; *Rayonier, Inc. v. United States*, 352 U.S. 315, 318 (1957)).

As reminded by the Supreme Court, when construing the FTCA, "[w]e should also have in mind that the Act waives the immunity of the United States and that . . . we should not take it upon ourselves to extend the waiver beyond that which Congress intended. Neither, however, should we assume the authority to narrow the waiver that Congress intended." *Smith v. U.S.*, 507 U.S. 197, 203 (1993) (quoting *United States v. Kurbrick*, 444 U.S. 111, 117–18 (1979). "Among the limitations Congress placed on the consent to suit is the requirement that the plaintiff initially present an administrative claim to an appropriate federal agency within two years of the date the cause of action accrues." *Muth v. U.S.*, 1 F.3d 246, 249 (4th Cir. 1993); 28 U.S.C. § 2401 ("A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing . . . of notice of final denial of the claim by the agency to which it was presented.").

With these basic principles in mind, the first conclusion to be drawn is that the United States is the only proper Defendant under the FTCA. Thus, a more detailed analysis of whether

Columbia's FTCA claims survive will be considered only as against the United States.[2]   The

United States argues that Plaintiff has failed to meet its burdens under the FTCA by failing to (1)

present an administrative claim to the appropriate agency and (2) identify any Federal employees

or otherwise implicated any Federal action in its claims.   Since the FTCA requires both

exhaustion and action by a Federal employee, a failure on either front would require dismissal.

### A.  FTCA Exhaustion Requirements

Through 28 U.S.C. § 2675, Congress introduced administrative exhaustion as a condition

limiting waiver of immunity under the FTCA. *See McNeil v. U.S.*, 508 U.S. 106, 112 (1993) ("The

most natural reading of the statute indicates that Congress intended to require complete exhaustion

of Executive remedies before invocation of the judicial process").   Requiring administrative

exhaustion ensures that the relevant agency has notice of the allegations against it, so that "it may

investigate the claim and respond either by settlement or by defense." *Tucker v. United States

Postal Serv.* 676 F.2d 954, 958 (3rd Cir. 1982).

In relevant part, § 2675(a) provides that:

> An action shall not be instituted upon a claim against the United States for money
> damages for injury or loss of property or personal injury or death caused by the
> negligent or wrongful act or omission of any employee of the Government while
> acting within the scope of his office or employment, unless the claimant shall have
> first presented the claim to the appropriate Federal agency and his claim shall have
> been finally denied by the agency in writing and sent by certified or registered mail.

---

[2]   To the extent that Columbia intended to pursue claims against other Defendants under the
FTCA, those claims cannot proceed.   Dismissal of FTCA claims against defendants other than the
United States is not a matter of parsing the hybrid state-federal nature of such defendants or
determining whether actions of federal employees are within the discretionary function exception,
but rather flows from the considerably more simple premise that the only appropriate defendant in
an FTCA action is the United States. *See* 28 U.S.C. § 2679(a); *Smith v. United States*, 561 F.3d
1090, 1099 (10th Cir. 2009); *Browning v. U.S.*, 584 Fed.Appx. 149 (4th Cir.); *Jackson v. Kotter*,
541 F.3d 688, 693 (7th Cir. 2008); *Roman v. Townsend*, 224 F.3d 24, 27 (1st Cir. 2000).   Thus,
Columbia's FTCA-based claims are against the United States, and Columbia's theory of recovery
may well be that the United States is liable under the FTCA for the tortious acts of its federal
employees, agents, or instrumentalities (e.g., West Virginia Army National Guard technicians).

28 U.S.C. § 2675(a).   "Failure to exhaust administrative remedies must result in dismissal of the lawsuit for want of jurisdiction." *Id.* (citing *Pyler v. United States*, 900 F.2d 41, 42 (4th Cir. 1990); *see also Henderson v. United States*, 785 F.2d 121, 123 (4th Cir. 1986) (explaining that the exhaustion requirements prescribed by 28 U.S.C. § 2675(a) are "jurisdictional and may not be waived").   Accordingly, "[i]t is incumbent upon the claimant to exhaust his claim with the agency prior to bringing a suit in district court." *Ziteng Liu v. U.S. Citizenship and Immigration Services, Texas Service Center*, 317 Fed. Appx. 361, 362 (4th Cir. 2009) (citing 28 U.S.C. § 2675(a)).

The "appropriate agency" with which to file an administrative complaint is the "Federal agency whose activities gave rise to the claim." 28 C.F.R. § 14.2(b).   If an administrative complaint is presented to any other Federal agency, federal regulations further provide that "that agency shall transfer it forthwith to the appropriate agency, if the proper agency can be identified from the claim, and advise the claimant of the transfer." 28 C.F.R. § 14.2(b); *see also* 32 C.F.R. § 536.32 (requiring the same).

A state National Guard may be the "appropriate Federal agency" to submit a claim to for purposes of FTCA administrative exhaustion. *Perez v. U.S.*, 167 F.3d 913, 918 (5th Cir. 1999) ("The filing of the claim against the Texas National Guard meets this requirement.   The Guard acts in different capacities, but it is one entity.   The appropriate agency thus received the claim."). Indeed, even the United States itself has argued this possibility elsewhere. *See Fraley v. United States*, No. 3:08-cv-00016, 2009 WL 2579199 (W.D. Pa. Aug. 20, 2009).   In *Fraley*, though the United States acknowledged that Pennsylvania guardsmen were federal employees for purposes of the FTCA while deployed pursuant to 32 U.S.C. § 502(f), it nonetheless maintained that the plaintiff had failed to properly exhaust administrative remedies by filing a SF-95 form with FEMA, but only a letter to the Pennsylvania Army National Guard ("PARNG"). *Id.* at *3.   The

*Fraley* court accepted an argument from the United States that the PARNG was the appropriate federal agency to receive an administrative complaint, leaving the question of whether the plaintiff's letter was substantively adequate. *Id.* at \*11.

With respect to substantive requirements, skeptical of further regulatory conditions on presentment, several circuits have concluded that § 2675(a) claim presentment requirements are satisfied "if the claimant (1) gives the agency written notice of his or her claim sufficient to enable the agency to investigate and (2) places a value on his or her claim." *Tucker v. U.S. Postal Service*, 676 F.2d 954, 989 (3rd Cir. 1982); *see also Henderson v. U.S.*, 953 F.2d 638, 638 (4th Cir. 1992); *Adams v. U.S.*, 615 F.2d 284, 287–88 (5th Cir. 1980); *Douglas v. U.S.*, 658 F.2d 445, 447–48 (6th Cir. 1981); *Warren v. U.S. Dept. of Interior Bureau of Land Mgmt.*, 724 F.2d 776, 780 (9th Cir. 1984).   Consistent with such interpretations, the *Fraley* court resolved that though the letter ultimately substantively failed by not providing a "sum certain," it nonetheless "detailed sufficient information to put the Guard on notice of the in-fact federal nature of the claim, regardless of any misstated state-jurisdiction-based aspirations." *Id.* at \*11.

Here, on July 30, 2013, Columbia sent a claim letter to the Adjutant General of West Virginia. ECF No. 73-1.   Through that letter, Columbia provided notice of its claim against the WVARG, demanding damages of $1,116,915. *Id.*   Columbia argues that this claim letter to the Adjutant General was directed to the appropriate agency and satisfies the administrative exhaustion requirements of 28 U.S.C. § 2675(a).   In contrast, the United States argues that whether or not Columbia's letter was sent to the appropriate agency, the claim letter fails to identify any federal conduct or federal agency, and instead amounts to a state claim to a state agency complaining of wrongful state conduct.

Admittedly, Columbia's claim letter does not expressly mention federal claims. In answer to the United States' argument that the letter fails because Columbia "identified no Federal conduct and no Federal agency," Columbia offers that it "did allege federal actors and federal conduct in its Complaint." ECF No. 79 at 12. Allegations in the complaint, however, cannot cure a defect in administrative exhaustion. *See Henderson*, 785 F.2d at 125 (explaining that exhaustion requirements cannot be satisfied by initiating suit in state court). Though not cured by allegations in the complaint, Columbia's letter is nevertheless adequate insofar as a claimant is not required to expressly identify conduct as federal or to specifically allege federal claims when providing initial notice of a claim to an appropriate Federal agency. *See Fraley*, 2009 WL 2579199, at *11. By providing notice to the Adjutant General—a position with state and federal responsibilities—and a sum certain, Columbia satisfied exhaustion requirements.

## B. Actions of Federal Employees, Agents, or Instrumentalities

The next question to be considered is whether the actions at issue here were the actions of Federal employees, agents, or instrumentalities, as required under the FTCA.[3] While state law

---

[3] Columbia dedicates significant space to the argument that this Court has jurisdiction over Defendants pursuant to the FTCA because construction of the armory was an "inherently federal project." *See* ECF No. 79. However, Columbia does not provide any legal authority suggesting that "inherently federal in nature" is a legal standard under the FTCA, and this Court has found no such authority. To the contrary, existing authority rather plainly suggests that the factual allegations relied upon by Columbia to argue that the project was "inherently federal" cannot be a basis for federal liability under the FTCA.

The fact that the United States funded construction of the armory or that such funding was contingent of a degree of Federal oversight does not convey jurisdiction under the FTCA. *See United States v. Orleans*, 425 U.S. 807 ("The Tort Claims Act was never intended, and has not been construed by the Court, to reach employees or agents of all federally funded programs that confer benefits on people."); *Dixson v. United States*, 465 U.S. 482, 500 n.18 (1984) ("In *United States v. Orleans*, 425 U.S. 807 (1976), the [Supreme Court] noted that federal funding and federal regulation do not convert the acts of recipients, be they entrepreneurs or states, into federal governmental acts, for purposes of the [FTCA], precisely because the local entities . . . have complete control over daily operations. We also noted, however, that those entities are responsible to the United States for compliance with the specifications of a contract or grant."). Similarly,

may define substantive duties under the FTCA, whether a person is an "employee of the government" under the FTCA is governed by federal law. *Logue v. United States*, 412 U.S. 521, 528 (1973); see also, *Robb v. United States*, 80 F.3d 884, 887 (4th Cir. 1996). Relevant to that question, the FTCA provides the following definitions:

> As used in this chapter and sections 1346(b) and 2401(b) of this title, the term "Federal agency" includes the executive departments, the judicial and legislative branches, the military departments, independent establishments of the United States, and corporations primarily acting as instrumentalities or agencies of the United States, but does not include any contractor with the United States.
>
> "Employee of the government" includes (1) officers or employees of any federal agency, members of the military or naval forces of the United States, members of the National Guard while engaged in training or duty under section 115, 316, 502, 503, 504, or 505 of title 32, and persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation, and (2) any officer or employee of a Federal public defender organization, except when such officer or employee performs professional services in the course of providing representation under section 3006A of title 18.
>
> "Acting within the scope of his office or employment", in the case of a member of the military or naval forces of the United States or a member of the National Guard as defined in section 101(3) of title 32, means acting in line of duty.

28 U.S.C. § 2671.

As acknowledged in the United States' Second Supplemental Response, "*at least* one person involved in the construction of the Tri-State Armed Forces Reserve Center (the "Armory") was a federal employee as well as a state employee." ECF No. 80 at 2 (emphasis in original). Based on information disclosed in the course of discovery, it appears that MAJ Rick Walker, a National Guard Technician, served as Construction Project Manager during original construction of the Armory. *See* Ex. 1, Adjutant General of West Virginia's Responses to Plaintiff's First

---

provisions in the contract invoking federal rules and regulations or rendering obligations under the contract "subject to Government inspection, both during and after completion of the tasks" do not convey jurisdiction under the FTCA. *Berkman v. United States*, 957 F.2d 108, 113–14 (4th Cir. 1992).

Interrogatories and Requests for Production of Documents, at 7–8, ECF No. 80-1.   It was further disclosed that "the State's [Architecture and Engineering] Firm designed the [Armory], oversaw construction, and performed contract administrative services, while the construction company and its sub-contractors constructed the [Armory]." *Id.*   At the time, MAJ Walker was a contract specialist or administrative specialist for the West Virginia Army National Guard, and he "served as a liaison between the State's [Architecture and Engineering] Firm and the [West Virginia Army National Guard] and monitored construction activities and progress." *Id.*; Ex. 2, Architect's Field Report for 25 July 1995, WVANG008415, ECF No. 80-2; Ex. 3, Letter from Richard J. Walker, Administrative Officer, to Ric Neal of Jerry Goff Architecture (June 28, 1995), WVANG002792, ECF No. 80-3.

While acknowledging the possibility that MAJ Walker was a federal employee, the United States remains "unsure of MAJ Walker's status at the time of construction or whether his actions fall within the allegations of the complaint." ECF No. 80 at 3.   That material question prevents dismissal at this stage of litigation.   Accordingly, Columbia's FTCA claims against the United States for actions taken by federal employees, agents, or instrumentalities may proceed.

## IV.   CLAIMS AGAINST STATE DEFENDANTS

In addition to claims raised pursuant to the FTCA, Columbia also asserts trespass, nuisance, and negligence claims against the State Defendants (WVANG, West Virginia Armory Board, and the Adjutant General of West Virginia).   As discussed above, the FTCA does not abrogate state immunity from suit in Federal court.   State Defendants move to dismiss, invoking the Eleventh Amendment.

The Eleventh Amendment functions to "limit the Article III jurisdiction of the federal courts to hear cases against States and state officers acting in their official capacities," and to

-13-

"confer sovereign immunity on an arm of the State." *Kitchen v. Upshaw*, 286 F.3d 179, 183–84 (4th Cir. 2002). "A state may waive its constitutional immunity and consent to suit in federal court, and when it does so, the eleventh amendment will not bar the action." *Westinghouse Elec. Corp. v. West Virginia Dept. of Highways*, 845 F.2d 648, 470 (4th Cir. 1988). "Eleventh Amendment immunity does not extend to mere political subdivisions of a State such as counties or municipalities. However, the amendment does confer sovereign immunity on an arm of the State." *Kitchen v. Upshaw*, 286 F.3d 179, 184 (4th Cir. 2002) (citations omitted).

Here, the West Virginia Army National Guard, West Virginia Armory Board, and the Adjutant General are each state entities or agencies and are entitled to state immunity. Columbia has identified no waiver of state immunity. Instead, Columbia appears to exclusively rely on the limited waiver of federal immunity in the FTCA. That limited waiver, however, does not abrogate the immunity enjoyed by states and their agencies. To the extent that some individual actors were operating as federal employees, Columbia may continue to pursue its claims under the FTCA and against the United States. For example, assuming that technicians with the West Virginia Army National Guard are federal employees for purposes of the FTCA and committed some tortious act, liability for such acts must be found against the United States and not against the West Virginia Army National Guard or the Adjutant General.

## V. CLAIMS AGAINST TRI-STATE AIRPORT AUTHORITY

Turning finally to Columbia's trespass, nuisance, and negligence claims against Tri-State Airport Authority ("TSAA"), TSAA argues that it is a public corporation, entitled to immunity under the eleventh amendment. *See* Syl. Pt. 1, *Meisel v. Tri-State Airport Auth.*, 64 S.E.2d 32 (W.Va. 1951) (explaining that the TSAA is a public corporation created under Chapter 142, Acts of the Legislature, 1949). "The term 'public corporation' has a well-recognized legal significance

and is generally held to be one created by the State for political purposes and to act as an agency in the administration of government." *White v. Berryman*, 418 S.E.2d 917, 923 (W.Va. 1992). Whether or not TSSA's self-characterization is accurate, it reveals nothing with respect to our principle inquiry in determining whether TSAA is entitled to immunity as an arm of the state: whether a judgment against TSAA implicate the West Virginia treasury.

In distinguishing state instrumentalities entitled to sovereign immunity from those that are not so entitled, we must consider the twin purposes of the Eleventh Amendment: (1) "the State's fears that 'federal courts would force them to pay their Revolutionary War debts, leading to their financial ruin,'" and (2) "the integrity retained by each State in our federal system." *Kitchen v. Upshaw*, 286 F.3d 179 (4th Cir. 2002) (internal quotation marks omitted) (quoting *Hess v. Port Auth. Trans-Hudson Corp.*, 512 U.S. 30, 39 (1994)).   In light of those twin purposes, "the principal factor to be considered is 'whether a judgment against the government entity would have to be paid from the State's treasury." *Kitchen*, 286 F.3d at 184 (quoting *Cash v. Granville County Bd. of Education*, 242 F.3d 219, 223 (4th Cir. 2001)).   If a judgment against the entity would be paid from the State's treasury, the inquiry will be at an early end as the entity will enjoy immunity. *Id.* (citation omitted).   However, a contrary finding marks only the start of the inquiry. *Id.*

When assured a judgment would not be paid from the State's treasury, the court "must [next] determine if the relationship of the entity with that state is close enough to implicate the 'dignity of the State as a sovereign.'" *Kitchen*, 286 F.3d at 184 (quoting *Cash*, 242 F.3d at 224). As directed by the Fourth Circuit, "[w]e apply three additional factors in this determination: 1) the degree of control that the State exercises over the entity; 2) whether the entity deals with local rather than statewide concerns; and 3) the manner in which State law treats the entity." *Kitchen*, 286 F.3d at 184 (internal quotations and citations omitted).

-15-

Here, the legislative grant creating TSAA described the entity as a "public corporation" which "shall have perpetual succession, may contract and be contracted with, sue and be sued, and have and use a common seal." Ch. 142, ECF No. 83-1. TSAA does not appear to receive significant state funding or financial support from the state treasury. To the contrary, TSAA appears to operate independently, sustained by user fees and rental income. Thus, the Court is assured that a judgment against TSAA would not implicate the state treasury.

Next, the Court cannot agree that TSAA is so closely related to West Virginia as to implicate the dignity of the state and warrant immunity. First, apart from its legislative creation, the state of West Virginia does not exercise significant control over TSAA operations. The TSAA self-identifies as an independent nonprofit agency and enjoys the support of a variety of members from not only West Virginia, but also Ohio and Kentucky. Second, the TSAA serves extra-local concerns, but such concerns are regional at best, without significant state-wide implications. As suggested by its very name, it serves the interests of the tri-state region and not the exclusive interests of West Virginia. Finally, there is no indication that the state treats the TSAA in a manner that would favor immunity. Accordingly, the TSAA is not entitled to Eleventh Amendment immunity, and Columbia may continue to pursue its claims against TSAA.

## VI.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** the State Defendants' Motion to Dismiss, **DENIES** the United States' Motion to Dismiss, and **DENIES** Defendant TSAA's Motion to Dismiss. The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER:      July 14, 2015

ROBERT C. CHAMBERS, CHIEF JUDGE

-16-