IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

**HUNTINGTON DIVISION**

COLUMBIA GAS TRANSMISSION LLC,

                Plaintiff,

v.                               CIVIL ACTION NO.   3:14-11854

TRI-STATE AIRPORT AUTHORITY,

                Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending is Defendant Tri-State Airport Authority's ("the Airport") renewed motion for judgment as a matter of law, or in the alternative, motion for new trial. ECF No. 255. For the following reasons, the Court **DENIES** both of the Airport's motions.

## I.     Background

In its Complaint, Plaintiff Columbia Gas ("Columbia Gas") brought claims alleging the Airport and other defendants now-dismissed from this action, including the West Virginia Army National Guard (the "Guard"), caused a landslide damaging Columbia Gas's natural gas pipeline and requiring emergency remediation.[1]  Columbia Gas's claims against the Airport for negligence, trespass, and nuisance proceeded to trial on February 17, 2016.

At trial and after Columbia Gas's case-in-chief, the Airport moved for a directed verdict, i.e., judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50. In its motion for

---

[1] Relevant background for this Memorandum Opinion and Order can be found in the Court's previous Opinions. *See Columbia Gas Transmission, LLC v. United States*, __ F.Supp.3d __, No. 14-11854, 2016 WL 447627, at *1 (S.D.W. Va. Feb. 4, 2016); *Columbia Gas Transmission, LLC v. United States,* No. 14-11854, 2015 WL 4276334, at *1 (S.D.W. Va. July 14, 2015).

judgment as a matter of law, the Airport argued that Columbia Gas failed to carry its burden of proof on the negligence claim. The Court denied the motion, finding evidence of the Airport's negligence was sufficient to send the claim to the Jury. Specifically, the Court found:

> The evidence has been that it was, first, the Airport's activity which created the fill. Whether they had contractors do it . . . is immaterial to that. The owner of the land caused to be created an artificial condition, an end-dump fill, immediately above the pipeline right-of-way. Further, the Airport at a later time leased the property to the Guard knowing and approving that the Guard intended to build structures on the surface and then use the fill as a location for drainage of stormwater from the Guard's facilities. The plaintiff has adduced testimony that that violates the standard of care for a landowner, that it creates an unreasonable risk of a landslide happening, which is precisely what occurred. I think that that evidence is sufficient to take this case to the jury. We'll let the jury determine the facts.

Trial Tr. Day 2 at 203:20-204:16. In sum, if the Jury found the facts above to be true, sufficient evidence at trial supported Columbia Gas's negligence claim, as explained in the Court's written opinion denying summary judgment to the Airport, *see Columbia Gas Transmission LLC v. Tri-State Airport*, No. 14–11854, 2016 WL 844834, at *4 (S.D.W. Va. Mar. 1, 2016), *available at* ECF No. 244 (explaining Columbia Gas's negligence claim asserts the Airport breached its duty of care by placing or permitting placement of end-dump fill on the slope above Columbia Gas's easement and by permitting the Airport's tenant, the Guard, to place a drainage field on that slope, and further, the Airport's breach of duty factually and proximately caused damage to Columbia Gas's pipeline.)

After a three day trial, the Jury found the Airport liable on each claim. The Jury further found Columbia Gas shared no fault for the landslide, rejecting the Airport's comparative negligence defense. The Jury awarded damages for the entire amount Columbia Gas requested, $1,116,915.00.

Since trial, the Airport timely filed the instant renewed motion for judgment as a matter of law, or in the alternative, motion for new trial. ECF No. 256. Next, the Court will explain the standard governing the Airport's motions, then discuss the arguments presented by the Airport.

## II.     Legal Standard

Federal Rule of Civil Procedure 50(b) permits a party who previously unsuccessfully moved for judgment as a matter of law to renew his or her motion within 28 days after entry of judgment and to seek alternatively a new trial under Rule 59. Fed. R. Civ. P. 50(b). A Rule 50(b) renewed motion for judgment as a matter of law follows the same standard as a Rule 56 motion for summary judgment. *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644 (4th Cir. 2002) (quotations and citations omitted). Accordingly, a renewed motion for judgment as a matter of law should be granted only if a jury, viewing the evidence in a light most favorable to the nonmovant, could have properly reached the conclusion reached by this jury. *Id.* at 645 (quotations and citation omitted); *see also Nease v. Ford Motor Co.*, No. 13–29840, 2015 WL 4508691, at *1 (S.D.W. Va. July 24, 2015) (citation omitted). In ruling on a motion for judgment as a matter of law, the court must view the evidence in a light most favorable to the nonmovant and draw all reasonable inferences in her or his favor without weighing the evidence or assessing the witnesses' credibility. *Dennis*, 290 F.3d at 645. If reasonable minds could differ about the result in the case, the court must affirm the jury's verdict. *Bryant v. Aiken Reg'l Med. Centers Inc.*, 333 F.3d 536, 543 (4th Cir. 2003) (citation omitted).

Federal Rule of Civil Procedure 59 governs motions for a new trial. Fed. R. Civ. P. 59. On a motion for new trial, "the district court may weigh the evidence and should grant a new trial only if 1) the verdict is against the clear weight of the evidence, 2) is based on evidence which is false,

or 3) will result in a miscarriage of justice." *Bryant*, 333 F.3d at 543 (citation and internal quotations omitted).

## III.    Discussion

The Airport asks for judgment as a matter of law in its favor, or in the alternative, for a new trial. The Court deals with each motion in turn.

### A.    Renewed Motion for Judgment As a Matter of Law Under Rule 50(b)

The Airport argues judgment as a matter of law is proper for two reasons: (1) Columbia Gas presented insufficient evidence for a jury to properly conclude the Airport was negligent; and (2) the Airport's approval of the Guard's site development plans is entitled to immunity under West Virginia Code Section 29–12A–5(a)(9). The Court disagrees with both arguments.

First, the evidence at trial, viewed favorably to Columbia Gas, permitted the Jury to properly conclude the Airport acted negligently and thereby caused damage to Columbia Gas's pipeline. Under its negligence claim, Columbia Gas had to prove: a reasonably prudent landowner, abiding by its duty to use due care, would not have placed end-dump fill on a hillside directly above another's easement, and would not have permitted its tenant to place a drainage field on the end-dump fill; the Airport breached this duty; and the breach was a substantial factor in and proximate cause of the damage to Columbia Gas's pipeline and right-of-way. Considering the duty element, the Airport owed Columbia Gas a duty of ordinary care.[2]  The Airport's duty to Columbia Gas arises from the Parties' relationship as landowner and holder of an easement on the

---

[2]  *See Columbia Gas Transmission LLC*, 2016 WL 844834, at *4 ("There are two different duties the Airport owed to Columbia Gas . . . First, as Columbia Gas maintains, under West Virginia law a person owes a duty to foreseeable plaintiffs to act with ordinary care. Second, the Airport, as an owner of land burdened by an easement, has a duty to the easement holder to not interfere with the uses authorized by the easement. See Restatement (Third) of Property (Servitudes) § 1.2 (Am. Law Inst. 2000).").

landowner's property. The landowner's placing uncompacted fill material on a slope adjacent to the easement and permitting a drainage system on that slope presents a foreseeable risk of interference with the easement's use and harm to property on the easement. Moreover, evidence was presented at trial that a reasonable landowner under the circumstances would have foreseen that placing loose organic material on a slope above an easement and permitting a drainage system on that slope, taken together, presented an unreasonable risk of interference with the easement holder's use of the easement and risk of harm to the easement holder's property. *See* Trial Tr. Day 2 at 36:12, 38:2–4, 216:5–16 (placing end-dump fill); Trial Tr. Day 3 at 65:18–20, 71:9–13 (same); Trial Tr. Day 2 at 43:11–25 (approving construction and drainage system on end-dump filled slope); Trial Tr. Day 3 at 76:17–77:14, 82:4–8 (same).[3] Turning to the breach element, evidence was presented at trial that the Airport placed—or approved placement of—end-dump fill on a slope above Columbia Gas's pipeline. *See* Trial Tr. Day 2 at 54:20–55:4. Additionally, there was evidence the Airport's tenant, the Guard, constructed a drainage system on that fill. Coupled with this evidence, Columbia Gas introduced a lease provision from which a jury could reasonably conclude the Airport had authority to approve the Guard's construction projects, *see* Lease Agreement, Ex. B, ECF No. 255–2 ("[N]o work hereunder shall be commenced or performed by the [Guard] without written approval thereof by [the Airport]."), and testimony of the Airport's

---

[3] The Court rejects the Airport's argument that the duty element is unmet because the landslide on the subject slope was unforeseeable to a reasonable landowner in the Airport's position. The Airport points out evidence was presented that landslides occurred on other parts of the Airport's property but not near the subject slope. As made clear by the analysis above, evidence of these landslides was not necessary to establish the foreseeability of a landslide on the subject slope. As such, the Court rejects the Airport's argument that such landslides needed to be nearer to the subject slope to make a landslide on that slope foreseeable to the Airport. Additionally, based on Columbia Gas's expert's analysis finding the Airport placed fill on the slope during expansion projects in the 1950s and 1970s, the Court is unpersuaded by the Airport's argument that a landslide was not foreseeable due to the Airport's not knowing its end-dump fill was placed on the subject slope.

President established that the Airport reviewed and approved the Guard's construction plans, which included a drainage system that emptied onto the slope constructed with end-dump fill.[4] Trial Tr. Day 2 at 233:8–23. Evidence of factual and proximate cause was supplied by Columbia Gas's expert Dale Nicholson, who testified that placing end-dump fill on the slope and developing a drainage system on that slope caused the 2012 landslide. Trial Tr. Day 2 at 32:2–5, 36:1–12, 38:24–39:3, 43:25–43:5, 44:5–9, 46:6–10, 52:2–19, 56:10–14, 20–23. Accordingly, a jury, viewing the evidence in a light most favorable to Columbia Gas, the nonmovant, could have properly come to the conclusion reached by this jury, that the Airport acted negligently and thereby factually and proximately caused damage to Columbia Gas's pipeline.

The Airport's argument that "mere placement of end-dump fill did not result in a landslide" is unavailing. Even if placing end dump fill in the slope would have been insufficient on its own—i.e., without the Guard's drainage system—to produce the instant landslide, a jury could properly conclude from the evidence presented that the Airport also permitted its tenant, the Guard, to construct a drainage system emptying onto the subject slope. Construing the evidence in a light most favorable to Columbia Gas, a jury could properly conclude the drainage system's dumping and channeling water onto the end-dump filled slope was, in part, due to the Airport's decision to approve the Guard's construction plans. As such, the Jury was entitled to decide that the drainage system's effect on the slope resulted from a negligent act of the Airport.

Assuming the Airport's newly proffered immunity theory has not been waived, this theory does not warrant judgment as a matter of law on the negligence claim. In its renewed motion for

---

[4] The Airport also theorizes that the Guard's finding deleterious material within the slope absolved the Airport from a duty to disclose the slope's composition to the Guard. Even accepting this for the sake of argument, the evidence at trial nevertheless permitted a jury to reasonably conclude the Airport acted negligently with respect to the drainage system by approving construction that emptied water onto the subject slope.

-6-

judgment as a matter of law, the Airport claims for the first time that under West Virginia Code Section 29–12A–5(a)(9) the Airport is immune from liability based on negligent approval of the Guard's drainage system. West Virginia Code Section 29–12A–5(a)(9) provides that a political subdivision[5] is immune from liability for losses resulting from "[l]icensing powers or functions including, but not limited to, the issuance, denial, suspension or revocation of or failure or refusal to issue, deny, suspend or revoke any permit, license, certificate, approval, order or similar authority." W. Va. Code Ann. § 29–12A–5(a)(9) (West 2016). The West Virginia Supreme Court has explained that Section 29–12A–5(a)(9) "clearly contemplates" immunity for "any loss or claim resulting from licensing powers or functions." *Hose v. Berkeley Cty. Planning Comm'n*, 460 S.E.2d 761, 769 (W.Va. 1995). In *Hose*, the West Virginia Supreme Court ruled a county planning commission was immune from liability arising out of the commission's decision to approve building plans that caused increased water to flow onto property of landowners adjacent to the approved building. In this case, the Airport's approval of its tenant's construction plans is wholly different from the approval power exercised in *Hose*. Section 29–12A–5(a)(9) says nothing about granting immunity to political subdivisions for their decisions as landowners pursuant to lease provisions, which is the capacity in which the Airport acted here. Pursuant to the powers reserved to it in the lease, the Airport approved its tenant's construction of a drainage system on the subject slope. The Airport's acting as a landowner pursuant to a lease, and not as a governmental body pursuant to its licensing power, is sufficient to distinguish this case from *Hose*.

---

[5] The Parties do not dispute the Airport is a political subdivision for purposes of West Virginia Code Section 29–12A–5(a)(9).

In sum, the Airport is not entitled to judgment as a matter of law on Columbia Gas's negligence claim. Accordingly, the Court DENIES the Airport's renewed motion for judgment as a matter of law and will proceed to the Airport's alternative motion for a new trial.

### B.  Motion for New Trial Under Rule 59(a)(1)(A)

In the alternative, the Airport argues a new trial is warranted for three reasons. The Court considers and rejects each in turn.

### 1.  Jury Instruction on the Independent Contractor Defense

First, the Airport contends the Court committed reversible error by failing to provide a jury instruction on the independent contractor defense under West Virginia law. The Court previously rejected the Airport's argument that the independent contractor defense applies in this case, which omits a *respondeat superior* claim and alleges the Airport itself acted negligently. *See* ECF No. 194 (denying the Airport's motion for summary judgment based, in part, of independent contractor defense); *Columbia Gas Transmission LLC*, 2016 WL 844834, at *3 (explaining basis for denying summary judgment based on independent contractor defense). Additionally, Columbia Gas points out the Airport's argument for a jury instruction on the independent contractor defense is procedurally barred by the Court's prior ruling—in the Order denying summary judgment—that the independent contractor defense does not apply in this case. Pl.'s Resp. 14–15, ECF No. 260. For the same substantive reasons offered in the Court's order denying the Airport's motion for summary judgment, and for the procedural reasons offered in Columbia Gas's response to the instant motion, the Court denies the Airport's motion for a new trial based on the independent contractor defense.

### 2.   Evidentiary Rulings

Second, the Airport maintains two of the Court's evidentiary rulings are erroneous and therefore a new trial is warranted. In arguing error, the Airport renews its objections to the Court's decisions to admit testimony by Mr. Kenny Newhouse explaining his work repairing the slope and to admit an indemnity provision of a lease between the Airport and the Guard.

First, admitting Mr. Newhouse's testimony was not erroneous. The Court admitted Mr. Newhouse's testimony under Federal Rule of Evidence 701. Rule 701 permits admitting non-expert opinion testimony that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702. Fed. R. Evid. 701. The Airport claims subsection (c) is unmet here because Mr. Newhouse's challenged testimony was based on his specialized knowledge. Columbia Gas hired Mr. Newhouse to repair the slope that failed and damaged Columbia Gas's pipeline. At trial, Mr. Newhouse testified for Columbia Gas about the work he did in repairing the failed slope. *See* Trial Tr. Day 1 at 67:1–86:24, ECF No. 260–1. Mr. Newhouse testified that his work consisted of removing organic material and refilling the slope with compacted material. He explained that he removed the organic material because organic materials decay and create voids in the material where water can enter. At this point in Mr. Newhouse's testimony, the Airport objected and argued Mr. Newhouse's testimony was inadmissible under Rule 701 because, according to the Airport, it was based on scientific, technical, or other specialized knowledge, which required for its admissibility that Mr. Newhouse be qualified as an expert under Rule 702. *Id.* at 86:7–10. The Court overruled the Airport's objection and ruled Mr. Newhouse's testimony was admissible under Rule 701 because

he was describing and explaining the work he did in repairing the slope, and therefore offering an opinion rationally based on his perception. *Id.* at 86:11–13.

Looking to the Advisory Committee's notes to Rule 701, the Court finds support for admitting Mr. Newhouse's testimony about why he removed organic material from the slope. The distinction between lay and expert opinion testimony, the Advisory Committee explains, is that "lay testimony 'results from a process of reasoning familiar in everyday life,' while expert testimony 'results from a process of reasoning which can be mastered only by specialists in the field.'" Fed. R. Evid. 701 advisory committee's note to 2000 amendments (citing and quoting *State v. Brown*, 836 S.W.2d 530, 549 (Tenn. 1992)). The Advisory Committee provides an example illustrating an admissible lay opinion: "the owner or officer of a business [may] testify to the value or projected profits of the business, without the necessity of qualifying the witness as an accountant, appraiser, or similar expert." *Id.* The owner's lay opinion is "based on his [or her] knowledge and participation in the day-to-day affairs of the business," and therefore admissible under Rule 701. *Id.* (citing and quoting *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153 (3d Cir. 1993)). Because Mr. Newhouse's testimony explaining why he removed organic material is based on knowledge and participation in the day to day affairs of slope repair work, his opinion is akin to an owner's opinion about the value of a commodity. Moreover, Mr. Newhouse's opinion results from a process of reasoning familiar in everyday life; the idea that organic material decomposes leaving space for water to enter does not entail a process of reasoning which can be mastered only by specialists in the field. As such, the Court reaffirms its ruling that Mr. Newhouse's testimony is lay opinion testimony properly admitted under Rule 701.[6] Because admitting Mr. Newhouse's

---

[6] The Airport contends Mr. Newhouse's testimony about decomposition of organic material amounts to an opinion on what caused the slope failure. Def.'s Reply 7, ECF No. 262. The Court finds no support in the trial transcript for this characterization of Mr. Newhouse's testimony. Mr.

testimony was not erroneous, the Airport is not entitled to a new trial based on the Court's admitting Mr. Newhouse's testimony.

Second, admitting the lease's indemnity clause was not erroneous. The Airport argues that admitting the indemnity clause violates Federal Rule of Evidence 411. Rule 411 provides, "[e]vidence that a person was or was not insured against liability is not admissible to prove whether the person acted negligently or otherwise wrongfully. But the court may admit this evidence for another purpose, such as proving a witness's bias or prejudice or proving agency, ownership, or control." Fed. R. Evid. 411. Prior to trial in this case, the Airport moved under Rule 411 to redact the indemnity clause[7] before admitting the lease into evidence. Without finding the clause fit within the ambit of Rule 411, the Court ruled the indemnity clause should be redacted as potentially confusing to the jury. Trial Tr. Day 1 at 18:14–19. The Court noted, however, that Columbia Gas could later seek to admit the indemnity clause if the Airport's witnesses denied the Airport bore responsibility for its negligence in connection with the Guard's use of the leased premises. *See id.* at 16:17–18:19. At trial, while examining the Airport's Director, Jerry Brienza, Columbia Gas asked Mr. Brienza: "Is it your position . . . that the Airport is not responsible for any conditions caused by it on the property occupied by the Guard?" Trial Tr. Day 1 at 161:20–22. Mr. Brienza

---

Newhouse's testimony about water and organic material was offered to explain why he removed organic material during slope remediation. *See* Trial Tr. Day 1 at 84:24–85:3.

[7] The lease indemnity clause provides:

> The State hereby assumes all risks incident to or in connection with its use of premises, and agrees to indemnify, defend and save harmless the Lessor, its members, officers, employees and agents, from any and all claims, suits, losses, or damages for injuries to persons or damage to property of whatever kind or nature arising directly or indirectly out of the State's occupancy and use of such premises unless caused by the negligence of the Lessor, its members, officers, employees or agents.

Lease Agreement ¶ 13, Ex. D, ECF No. 262–4.

ultimately testified in response, "I don't believe we caused any issue to the Guard. So, no, we do

not have any responsibility." *Id.* at 162:14–15.[8]  At that point, the Court permitted Columbia Gas

to question Mr. Brienza based on the lease's indemnity clause and noted the Airport's objection

based on Rule 411. The indemnity clause was ultimately admitted for two purposes. First, it was

admitted to impeach Mr. Brienza by contradiction.[9]  Second, it was admitted to prove the Airport

bore responsibility for its decision to approve the Guard's development plans, if that decision were

negligent.[10]  Admitting the indemnity clause does not violate Rule 411 because this indemnity

clause is not itself evidence of insurance, *see Jacobs Press, Inc. v. Hartford Steam Boiler

Inspection & Ins. Co.*, 107 F.3d 866 n.14 (4th Cir. 1997) (unpublished) (distinguishing between

liability and indemnification policies by noting "[a] policy that covers an insured for damage to its

own property, however, is not a 'liability' policy but an 'indemnity' policy"); *Galaxy Computer

Servs., Inc. v. Baker*, 325 B.R. 544, 551 n.2 (E.D. Va. 2005) (ruling indemnification agreement

was not evidence of liability insurance for purposes of Rule 411),[11] and even if it is evidence of

---

[8] Mr. Brienza's initial answer was not responsive, and Columbia Gas re-asked the question as follows: "Is it your position as you sit here today that the Airport has no responsibilities for issues that it caused on the property that it leased to the Airport -- I mean, to the Guard?" Trial Tr. Day 1 at 162:10–13.

[9] Mr. Brienza testified the Airport did not bear responsibility for its negligence in connection with the Guard's use of the leased premises, i.e., the Airport did not bear responsibility for its allegedly negligent approval of the Guard's plans. Mr. Brienza's testimony, although not directly responsive to the question posed to him initially, was directly contradicted by the lease's indemnity clause. The Court rejects the Airport's argument to the contrary. *See* Def.'s Reply at 8.

[10] Note, this is not using the indemnity clause to show negligence, but to show the Airport was responsible for its decision in the event that the decision was negligent. The distinction is fine but important to make because admitting extrinsic evidence to impeach by contradiction generally requires that the evidence is admissible on another issue and not solely offered for the purpose of contradicting the witness.

[11] Furthermore, the indemnity clause in this case is not effective and therefore does not operate as evidence of liability insurance. Notably, Rule 411 bars evidence of insurance because juries hearing evidence of insurance are inclined to draw an impermissible inference of fault when deciding the case. Fed. R. Evid. 411 advisory committee's note to 1972 proposed rule. The clause at issue here states the Airport is indemnified by the Guard *unless* the liability arises from the

insurance, the indemnity clause was admitted to impeach Mr. Brienza by contradiction and to show the Airport bore responsibility for the Guard's development plans, not to show that the Airport acted negligently. Therefore, admitting the indemnity clause was not erroneous under Rule 411, and a new trial is not warranted on the basis of the Court's admitting the indemnity clause.

### 3. Jury Errors

Finally, the Airport asks for a new trial due to errors by the jury that purportedly show the verdict is against the "clear weight of the evidence." Def.'s Memo. in Supp. 16, ECF No. 256. Specifically, the Airport points out the Jury, after finding the Airport's negligence caused the landslide, and despite finding Plaintiff Columbia Gas was not at fault in this case, erroneously proportioned fault among the Parties and the Guard, a non-party joint tortfeasor. Under West Virginia common law, if a jury finds the plaintiff is not at fault, the jury is not permitted to assign fault to the plaintiff or non-party joint tortfeasors. *Rowe v. Sisters of Pallottine Missionary Soc'y*, 560 S.E.2d 491, 500 (W. Va. 2001); *see also Modular Bldg. Consultants of W. Virginia, Inc. v. Poerio, Inc.*, 774 S.E.2d 555, 566 (W. Va. 2015). Therefore, the Jury in this case should not have assigned shares of fault among the Parties and the Guard, nor should it have even considered the special interrogatory asking for assignments of fault. However, the Jury's error is harmless because even without this error the Airport's share of fault would have been the same as it stands now: the Airport is jointly and severally liable to Columbia Gas for all damages caused by it and its joint

---

Airport's negligent act. Columbia Gas argues liability in this case arises from the Airport's negligent act. And so, Columbia Gas does not argue the Airport is indemnified by the Guard under the clause, i.e., it does not argue the clause operates like liability insurance barred by Rule 411. Because no party argues the indemnity clause is effective, the impressible inference will not be drawn here. Accordingly, Rule 411's rationale is not applicable here, and therefore, Rule 411 does not bar admitting the indemnity clause. *See Goldenson v. Steffens*, No. 10–00440, 2014 WL 3105033, at *8 (D. Me. July 7, 2014).

tortfeasors.[12] For this reason and those offered in Columbia Gas's response to the motion for new trial, *see* Pl.'s Resp. at 20–24, the Jury's errors on the verdict form do not warrant a new trial. [13]

### IV.   Conclusion

As explained above, the Airport is not entitled to judgment as a matter of law on the issue of the Airport's negligence. Additionally, a new trial is not warranted based on the lack of a jury instruction about the independent contractor defense, admissibility of certain evidence, nor jury error. Therefore, the Court **DENIES** the Airport's renewed motion for judgment as a matter of law and its alternative motion for new trial.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER:        May 2, 2016

ROBERT C. CHAMBERS, CHIEF JUDGE

---

[12] If the Guard is also at fault for the landslide, the Airport and Guard are joint tortfeasors, which permits Columbia Gas to sue either of them for all the indivisible damages caused by the landslide.
[13] The Court declines to rule on the Airport's request to strike the Jury's allocating 100% fault to the Airport. Even if the Guard's negligence in designing or constructing the drainage system was a proximate cause of the landslide, and even if the jury erred by not assigning some fault to the Guard for the landslide, the Jury was not entitled to apportion fault in this case for the reasons stated above, and therefore, the Jury's finding the Airport 100% at fault has no legal consequence.